Kilpatrick *v.* Byrne et al.

EBENEZER KILPATRICK *vs.* RANSON BYRNE, Adm'r, et. al.

The lien of all judgments rendered prior to the 24th of February, 1844, ceased at the end of two years from that date, although an execution may have been levied within that time, but no sale made under it until afterwards. 11 S. & M. 43; 12 Ib. 473; Ib. 697, cited and confirmed.

Cases not excepted out of the operation of a general law by the legislature, cannot be excepted by the courts. *Held,* that this case does not come within the meaning of any of the provisos of the statute of limitations of 24th of February, 1844; and the court below was correct in refusing the relief prayed for in the bill.

IN error from the northern district chancery court at Holly Springs; Hon. Henry Dickinson, vice-chancellor.

On the 7th of June, 1851, Kilpatrick filed his bill in the district chancery court at Holly Springs, alleging that, on the 20th of December, 1837, he recovered a judgment in the circuit court of Marshall county, against Nelson, Chambers, and Prentiss, for the sum of $780.48, and costs of suit; that the defendants sued out a writ of error, and the judgment was affirmed by the high court of errors and appeals, at its January term, 1839.

That, on the 5th of March, 1838, Nelson, Chambers, and Prentiss conveyed a tract of land, which is the subject of controversy in this suit, lying in Marshall county, to one James M. Ross; who, on the 23d of June, 1838, conveyed the same land to William Dye.

That an execution was regularly issued upon the said affirmed judgment, and levied by the sheriff of Marshall county, on the 24th of May, 1839, on the said tract of land, as the property of Nelson, Chambers, and Prentiss.

That William Dye, on the 12th of August, 1839, in order to prevent a sale of said land under said execution, filed his bill in the district chancery court at Holly Springs, and obtained an injunction restraining Kilpatrick from proceeding to sell said land under his execution.

That Dye departed this life, and his bill was prosecuted by his heirs, who obtained a decree perpetuating the injunction ; but, upon an appeal, that decree was reversed without a dissolution of the injunction, and the cause was remanded for further proceedings to the court below, where the injunction was dissolved on the 18th of July, 1846; and that, by that injunction, the complainant was absolutely restrained from all proceedings upon his judgment, from the 12th of August, 1839, to the 18th of July, 1846.

That the judgment in the said case of *Kilpatrick* v. *Nelson, Chambers and Prentiss*, was legally enrolled on the "judgment roll" of Marshall county.

That, after the death of Dye, the defendant Byrne administered upon his estate in the probate court of Marshall county ; the estate was declared insolvent, and Byrne was ordered by the court to sell said land, as a part of said estate, prior to the 18th of July, 1846.

That the complainant, immediately after the dissolution of the injunction against him, on the 18th of July, 1846, caused a writ of *venditioni exponas* to be issued for the sale of said land ; and the sheriff of Marshall county was proceeding to execute the writ, when, on the 17th of September, 1846, the said Byrne, as the administrator of said Dye, filed his bill in the district chancery court at Holly Springs, in which he set forth the date of the judgment of *Kilpatrick* v. *Nelson, Chambers, and Prentiss*, its affirmance by the high court, and that the judgment of affirmance had never been enrolled; and it was alleged that, by the omission to enrol the judgment of affirmance, the lien of Kilpatrick's judgment was lost after the 1st of July, 1845. Byrne also set forth in his bill, that Nelson, Chambers, and Prentiss had conveyed the land in question to James M. Ross, and that Ross had conveyed it to Dye; that the lands were assets in the hands of Byrne, as administrator of Dye ; and prayed an injunction to restrain Kilpatrick from proceeding to sell the land under his execution, which injunction was granted, and was served on Kilpatrick on the 23d of September, 1846.

The complainant filed a general demurrer to the said bill of Byrne, which came on to be heard in the court below, and was

Kilpatrick *v.* Byrne et al.

sustained, on the 5th of March, 1847; and the bill of Byrne was dismissed, upon the ground that the lands, at the time of the filing of Byrne's bill, were subject to the lien of Kilpatrick's judgment.

That, after the said dismissal of Byrne's bill, the complainant sued out another writ of *venditioni exponas* upon his judgment, and was proceeding to have the said land sold under it, when Byrne, on the 20th of September, 1847, sued out a writ of error from the decree dismissing his bill; and the high court of errors and appeals, at the November term, 1848, affirmed the decree of the vice-chancellor, sustaining Kilpatrick's demurrer.

Kilpatrick, in his present bill, pleads and relies upon the decree in the two cases of *Kilpatrick* v. *Dye's Heirs*, and *Byrne* v. *Kilpatrick*, as a bar to the claim of Byrne, as administrator of Dye, to the land in controversy.

The bill further alleges that, on the 12th of February, 1849, Kilpatrick sued out another writ of *venditioni exponas*, under which he caused said land to be sold on the 2d of April, 1849, and became himself the purchaser, at the price of $1,650, whereby, the complainant alleges, he became the owner of said land.

The prayer of the bill is, that the deed from Ross to Dye may be cancelled, as constituting a cloud upon the complainant's title, and for an account for rent.

The plea of the defendant, Byrne, sets forth, in substance, that the lands in controversy were conveyed by Nelson, Chambers, and Prentiss, to James M. Ross on the 5th of March, 1838, and by Ross to Dye on the 23d of June, 1838, for a valuable consideration; that both deeds have been duly recorded in the office of the clerk of the probate court of Marshall county, and pleads the 13th section of the act of limitations of the 24th of February, 1844, under which, he insists, the judgment in the case of *Kilpatrick* v. *Nelson, Chambers, and Prentiss* ceased, after the 24th of February, 1846, to operate as a lien upon the land in controversy; so that Kilpatrick, when he purchased that land on the 2d of April, 1849, acquired no title whatever by his purchase.

Byrne's answer, in aid of his plea, denies that it was decided,

in either of the cases of *Kilpatrick* v. *Dye's Heirs*, or *Byrne* v. *Kilpatrick*, that Kilpatrick had any lien upon the land in controversy; and alleges that, in the first case, the only question really decided was, that an original judgment of the circuit court was not extinguished by an affirmance thereof in the high court; and, in the latter case, that the only question presented and decided was, that it was unnecessary, in order to preserve the lien of an original judgment, that the judgment of affirmance should be enrolled; and it was further insisted, that it had never yet been decided, by any court having competent jurisdiction, whether the complainant had lost the lien of his judgment under the 13th section of the act of limitations of the 24th of February, 1844.

The vice-chancellor, by his decree, vacated Alderson's title, upon the ground that it was fraudulent as against Kilpatrick; but Dye's title was declared to be superior to that of Kilpatrick, who prayed a writ of error to this court.

*Watson*, for appellant.

1st. The defendant (Byrne) representing Dye's estate cannot rely upon statute of limitations of judgment liens, by the act of 1844, § 13, (Hutch. Code, 832.)

2d. The decision on the bill filed by Byrne in September, 1846, is conclusive in behalf of complainant.

As to the first of the above positions, it is insisted, that the cases reported in 13 S. & M. 509, and 1 Cushman, 213, have no application to the present case. In these cases, the debtors who claimed the benefit of the statute of limitations, had had no agency in arresting or preventing, by the injunction, earlier proceedings against him. And this remark is likewise true of the case of *Beirne* v. *Mower*, 13 S. & M. 427, and also of the case of *Rupert* v. *Dantzler*, 12 Ib. 697. In each and all of these four cases, the two last named, having arisen on that clause of the limitation act of 1844 now relied upon, the parties claiming the benefit of the limitation had not, by their own acts, prevented their adversaries from an earlier assertion of their rights or claims. In the present case, Dye and his heirs, and then his personal representative, enjoined and obstructed

complainant in the assertion of his rights; this they did ille-
gally and wrongfully, as this court decided; but still they now
propose to take advantage of their own wrong in the premises.
This, it is submitted, is not admissible.' See 7 S. & M. 791;
Ib. 698.   The attention of the court is particularly requested
to the principles announced on the page last above cited.   They
are directly applicable, the question decided having grown out
of a statute of limitation.

See, also, 6 Munford, 185; 9 Howard, S. C. R. 34–49; 1 U.
S. Digest, 540, par. 66; 2 Peters, 102.

As to the question of *res adjudicata:* Dye's estate having
been declared insolvent, Byrne, as his administrator, had a right
to file the bill which he did file against complainant, and to
have adjudicated the question whether complainant's judgment
lien, in September, 1846, more than two years after the passage
of the act of limitations of February, 1844, was still superior
to the deed of his intestate to the land in controversy.   1 Cush-
man, 66, 67, and 10 S. & M. 418, 425.   This last case settles
definitely the right of the administrator of an insolvent estate
to file a bill like the one Byrne, as administrator of Dye's estate,
filed in the premises, after said estate had been declared insol-
vent.

The bill of Byrne and the demurrer thereto, fairly presented
for decision the very question which the defendant insists is
now to be decided.   The omission to enroll a judgment is a
matter of fact, and, as such, if relied upon by a complainant,
must be stated in his bill.   But the limitation of judgment
liens, by the thirteenth section of the act of 1844, (Hutch. 832,)
is matter of law, and to avail himself of it, it was only neces-
sary for the facts of the case to be stated, as they were stated,
by Byrne in his bill.   Story, Eq. Pl. § 24; 1 Cushman, 214.
See, particularly, *Box* v. *Stanford,* 13 S. & M. 93.   In this case,
"the statute of frauds was not relied upon, either in the answer
or by plea," and still it was made by the court to govern the
case.

It is now insisted, that on the hearing of the bill of Byrne's,
the limitation now relied upon was overlooked by the court.
To this we reply, that of this fact there is no competent testi-

mony. The decree of the vice-chancery court, sustaining the demurrer and dismissing the bill, is a general one, containing no specification of the grounds upon which it was made. Trans. 24, 25. And the decree of this court simply affirms the decree of the court below. Trans. 28. Neither the brief of counsel, nor the opinion of the court, as delivered and reported, can be regarded as legal evidence to establish what the record of the case does not show. Testimony is admissible to show a want of identity between the parties, or the subject-matter of the present and the former suit; but not to prove that a question necessarily involved in the former suit, and which was necessarily decided in it, was overlooked. The decision of the former suit could not have been made without deciding the question now said to be an open one. In deciding that complainant's lien in September, 1846, overreached Dye's deed, every matter involved in this question, whether noticed or not, was, for the purposes of the case and controversy, actually decided.

In the case of *Smith and Elder*, 14 S. & M. 105, Mr. Justice Smith, in delivering the opinion of the court, says: " We must hold that all the legal questions raised by the demurrer to the second plea of defendant, were reviewed by this court on its decision of the case."

See 13 S. & M. 226, 229, 230; 10 Ib. 552. In this case, in considering a plea, the court say: " It does not admit the judgment and deny that the cause of action was the same, but it denies that the merits of the present suit were tried and determined in the former. This," the court then add, " does not come up to the point; for the true question is, whether the merits of the second suit were involved, and might have been tried in the former action." 10 S. & M. 555, 556. The whole opinion in this case is worthy of mature consideration. In *Hannum* v. *Cameron*, 12 S. & M. 513, the court say: " It is surely not admissible for a party to try his case by halves." 1 Blackford, 360; 11 Vermont, 148; 2 Comstock, 113; 4 Call, 379; 7 Johns. Ch. R. 286; 1 How. U. S. C. R. 134; 3 Ib. 413.

*Stearns* and *Harris*, for appellees, made the following points. The thirteenth section of the limitation act of the 24th of

February, 1844, (Hutch. Code, 832,) provides, that "no judgment heretofore rendered shall operate as a lien on the property of the defendant or defendants, for a longer time than two years from the passage of this act." That section of the act of limitations has been the subject of repeated adjudications by this court. See 11 S. & M. 43; 12 Ib. 473; Ib. 697; 13 Ib. 439, 440. It is held, in all these cases, that the lien of judgments, rendered before the passage of the act, ceased at the expiration of two years from the date of its passage; and in the case last cited, it is further held, that it can make no difference that an execution was levied before the lapse of the prescribed period of two years, if the lien of the judgment was not enforced by a sale of the property levied on within the two years. This seems to us effectually to close the door against any application for relief that might have been made by Kilpatrick, upon the ground that his execution was levied on the lands in controversy long before the passage of the act of the 24th of February, 1844.

This court has more than once decided that it had no power to engraft such exceptions upon the statute of limitations. *Robertson* v. *Alford,* 13 S. & M. 512; *Thornton* v. *Crisp,* 14 Ib. 54. This is the sound and general doctrine on the subject. Where the statute makes no exceptions in favor of infants, the chancellor can make none on the ground of any inherent equity applicable to infants. *Demarest* v. *Wynkoop,* 3 Johns. Ch. R. 146; Angell on Limitations, 373, *et seq.* It has even been held that, when the courts were closed by war, so that no suits could be instituted, the statute, nevertheless, continued to run. *Beckford* v. *Wade,* 17 Vesey, Jr. 93, and cases cited. Mr. Chief Justice Marshall, in delivering the opinion of the court in *McIver* v. *Ragan,* 2 Wheat. 25, says: "Wherever the situation of the party was such as, in the opinion of the legislature, to furnish a motive for excepting him from the operation of the law, the legislature has made the exception. It would be going far for this court to add to those exceptions." In that case, it was impracticable for the party who invoked the aid of the court to create an exception to the statute in his behalf, to have procured the testimony upon which his right of recovery

depended, within the period prescribed by the act of limitations. But Mr. Chief Justice Marshall held, that a suit might have been instituted, and that the court might have granted continuances until the testimony could be obtained. "But," he adds, "the courts cannot insert in the statute of limitations an exception which the statute does not contain. It has never been determined that the impossibility of bringing a case to a successful issue, from causes of uncertain duration, though created by the legislature, shall take such a case out of the operation of the act of limitations, unless the legislature shall so declare its will."

We are aware that decisions can be found, to the effect that the pendency of an injunction will suspend the running of the statute of limitations; but that doctrine, as we conceive, is opposed to the whole current of recent and respectable authority. The case of *Noland* v. *Seekright*, 6 Munf. 185, was relied on against us in the court below. In that case, the opinion of the court was not given, and we know nothing of the reasoning by which the court arrived at its conclusions. All that we do know is, that, after a judgment in ejectment, the execution of the writ of *habere facias possessionem* was prevented by injunction until after the expiration of the term laid in the declaration, and that the court, after the dissolution of the injunction, permitted the plaintiff to amend his declaration by enlarging the demise there laid from twenty to thirty years, so as to avoid the effect of the act of limitations. But this permission could only have been granted upon the ground stated by Stanard, counsel, in his argument, "that the demise in ejectment is merely fictitious; it is a remedy invented to try the title; is under the control of the court, and may be modelled so as to accomplish the purposes of justice." The principle of that case, therefore, is not analogous to that involved in the case now under consideration, and affords no countenance to the doctrine contended for by our opponents. But the very question now raised has been presented to, and decided by, this court, in *Robertson* v. *Alford*, 13 S. & M. 509. Mr. Chief Justice Sharkey, in delivering his luminous opinion, enforces, as well by reason as by authority, the doctrine that an injunction does not stop the running of

the statute of limitations. 1 Cushm. R. 213; *Barker* v. *Millard*, 16 Wend. 572. These cases, as we conceive, sufficiently sustain the proposition for which we contend, and show that Kilpatrick can derive no aid from the injunctions by which he has been restrained from selling the lands now in controversy.

Let us now inquire whether it is true, in point of fact, that Kilpatrick was actually restrained from proceeding to sell these lands under his execution, from 1839 to 1849, as alleged by him in his bill.

At law, a party who relies upon the statute of limitations, must plead it specially. To this rule there is no exception. But in equity, a single exception has been admitted. In cases where it. clearly appears, upon the face of the bill, that the claim or demand asserted by the complainant is barred by the statute of limitations, the defendant may take advantage of it by demurrer, instead of pleading it as a pure plea, or insisting upon it in his answer. *Prince* v. *Heylin*, 1 Atk. Ch. R. 493; Angell on Limitations, 360. But if the defendant demur, he must demur specially; for a general demurrer will reach only the defects apparent for want of equity upon the face of the bill, because it affords no indication of a · desire and intention, on the part of the defendant, to avail himself of the benefit of the statute.

We have not been able, after a very thorough investigation of all the authorities within our reach, to find a single case in which the benefit of the statute of limitations has been allowed to a defendant in a court of equity upon a general demurrer. The uniform and invariable rule appears to be, that no party, under any circumstances, can obtain the benefit of the statute without in some way insisting upon it; and if not insisted on, it is always regarded by the court as having been waived by the party. The same rule is applicable to plaintiffs and defendants.

There is no authority that we have been able to find, by which the right of Byrne to plead the statute of limitations in case like the present, can be seriously drawn in question. The cases cited by opposing counsel are not in point, for the principle of none of those cases applies to this. The authorities

cited to prove that the act of limitations, so far as it applied to judgments previously rendered, are equally inapplicable.

It has never been questioned by any respectable tribunal, but that it was competent for the legislature to shorten existing terms of limitation, and apply them to existing causes of action, provided a reasonable time be allowed, within which suits may be brought. *Mc Cracken* v. *Hayward*, 2 How. R. S. C. U. S. 613; *W. Feliciana R. R. Co.* v. *Stockett*, 13 S. & M. 397.

Mr. Justice YERGER delivered the opinion of the court.

In the year 1837, the complainant obtained a judgment in the circuit court of Marshall county against Nelson, Chambers, & Co. From that judgment Nelson, Chambers, & Co. prosecuted a writ of error to the high court of errors and appeals, in which court the original judgment was affirmed in the year 1839. Between the rendition of the judgment in the circuit court and its affirmance in the high court, Nelson, Chambers, & Co. sold a tract of land to William Dye, on which an execution, founded on said judgment, was levied. William Dye filed a bill enjoining a sale of the land, and during the pendency of the suit he died, and the suit was revived in the name of his heirs, and such proceedings had, that, in July, 1846, the injunction was dissolved. Complainant then obtained a *venditioni exponas* for the sale of the lands, but the sale was again prevented by an injunction obtained on the 17th September, 1846, by Ransom D. Byrne, as administrator, &c. of Dye. The complainant demurred to the bill of Byrne, and on the 5th of March, 1847, the demurrer was sustained and the bill dismissed. An *alias venditioni exponas* was then issued, and the complainant under it became the purchaser of the land. The complainant then filed the present bill, for the purpose of having the deeds made to Dye cancelled and removed as clouds upon his title.

At the time that Dye acquired title to the lands in controversy, the judgment in favor of complainant against Nelson, Chambers, & Co., was certainly a lien upon them, and Dye became the owner of them subject to that lien. It is also true, that the lien of this judgment remained and continued in full

force on the 24th day of February, 1844, and so continued for two years thereafter. But the defendant Byrne insists, that this lien ceased and determined at the end of two years from the 24th day of February, 1844, and that the complainant acquired no title to the premises by virtue of the sale made under the *venditioni exponas* in the year 1849.

The thirteenth section of the act of 24th February, 1844, declares, " that no judgment heretofore rendered shall operate as a lien on the property of the defendant or defendants, for a longer time than two years from the passage of the act." Hutch. Code, 832.

If the questions presented by this record were before us for the first time, and we were now to give a construction to the 13th section of the act of limitations above quoted, we would incline very much to the opinion, that wherever an execution, founded upon a judgment rendered prior to the 24th day of February, 1844, had been levied on property before the expiration of the two years provided in the act, a sale under it, though made after the lapse of two years, would relate back to the date of the levy, so as to give the purchaser under it the benefit of the lien as it existed at that time. Such a construction of the 13th section would, in our opinion, accord with the well settled principles of the doctrine of relation, and carry out the legitimate purposes and views of the legislature. But the decisions of this court heretofore have placed a different construction upon this section, and we, therefore, yield our individual opinions to the adjudications of the court, and must, therefore, hold, that the lien of all judgments rendered prior to the 24th February, 1844, ceased at the end of two years from that date, although an execution may have been levied within that time, but no sale made under it till afterwards. See 11 S. & M. 43 ; 12 Ib. 473; Ib. 697; and 13 Ib. 439.

But the counsel for the complainant insists, that while it may be true as a general rule, that the lien of a judgment rendered prior to the 24th February, 1844, expired at the end of two years from that date, yet the facts of this case make it an exception, and withdraw it from the operation of the rule.

49 *

The circumstance relied upon as forming this exception, consists in the fact that the complainant, when the statute of limitations was passed in 1844, was restrained by injunction from taking out execution on his judgment, and continued so enjoined until more than two years had elapsed from the passage of the law.

However just and reasonable it may be, that the legislature should have held, that these facts should constitute an exception to the general operation of the statute of limitations, it is certainly true, that they have not so declared it; and it has been frequently declared by this court, that where the statute makes no exceptions the court can make none. But the very point now urged has been heretofore adjudicated by this court.

In *Robertson* v. *Alford,* 13 S. & M. 509, the court declared, that an injunction issued under the 6th section of the act of 1843, establishing the mode of procedure against delinquent banks, did not suspend the operation of the statute of limitations as to claims held by a bank. In that case, Judge Sharkey remarked, that "the statute of limitations is one of good policy. It is a statute of repose, and should not be so construed as to defeat the object intended, by creating exceptions in cases supposed to be analogous in principle to those expressly excepted. To do so, would be to undertake to supply defective legislation by engrafting new provisions on the statutes. Cases not excepted by the legislature cannot be excepted by the courts;" and he cited the cases of *McIver* v. *Ragan,* 2 Wheat. R. 25; *Demarest* v. *Wynkoop,* 3 Johns. Ch. R. 129, as fully sustaining his position.

But it is said, that the injunction was sued out in the foregoing cases by a third party, while in the record before us it was obtained by the very party who is claiming the benefit of it. We concede the force of this position, and readily acknowledge that it presents a case which ought to have been excepted from the operation of the statute. But the statute on this subject is general. It has made no exception, and if we were to make an innovation upon it in this case, it would be a

Kilpatrick *v.* Byrne et al.

precedent for making an exception of every case that might hereafter arise, which, in the opinion of the court, in equity should be excepted.

In the case of *Barber* v. *Millard*, 16 Wend. R. 572, it was held, that the fact, that the commencement of a suit was stayed by injunction, did not take the case out of the statute. The court said: " It is clear that the case is not within the letter of either of the provisoes, and the equity of the statute has never been extended far enough to aid the plaintiff." Upon 'the whole, we were much disposed to give the complainant the relief sought by him. We do not see how it can be done consistently with the rules of law heretofore established by this court.

But it is insisted by the counsel for the appellant, that the questions raised by the defendant Byrne have been adjudicated between these parties, in a suit heretofore decided by this court. Upon examining that case, we find that Byrne filed a bill on the day of , in the year , in which the only question presented or decided by the court, was, that the lien of the judgment rendered in the circuit court, was not lost or destroyed by a failure to enrol the judgment of affirmance in the high court. It is true, that the question presented in this suit might have been raised by Byrne, and might have been decided, but it was not raised or decided. It may also be true, that Byrne would not now be permitted to file a bill as complainant, and set up as ground of relief in it, any matter which he could have urged in the first action ; but being a defendant in this suit, and the attempt being made to deprive him of the possession of the property, we think he has a right, in defence of his possession, to insist upon any point that has not been adjudicated between the parties. Entertaining these views, we are of opinion that the decree of the vice-chancellor should be affirmed.